**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WALBERTO HERNANDEZ-REYES,

    **Plaintiff,**

        v.

MASTER DONUTS, INC.,

    **Defendant.**

**CIVIL NO. 25-1469 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendant Master Donuts, Inc. ("Defendant" or "Master Donuts")'s *Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction* ("*Motion*") and Plaintiff Walberto Hernandez-Reyes ("Plaintiff" or "Hernandez-Reyes")'s opposition thereto. (Docket Nos. 26, 29). Having considered the parties' submissions, the Court rules that Defendant's mootness challenge requires consideration of matters outside the pleadings and is intertwined with the merits. Hence, the *Motion* at Docket No. 26 is **HELD IN ABEYANCE** and, pending further development of the record, will be evaluated under the Fed. R. Civ. P. 56 summary judgment standard. Defendant's request to declare Plaintiff and his counsel vexatious litigants is **DENIED WITHOUT PREJUDICE.**

    The parties shall comply with the joint inspection and supplemental briefing schedule set forth below.

Civil No. 25-1469 (RAM)                                                        2

## I.    PROCEDURAL BACKGROUND

Plaintiff initially filed an 11-page *Complaint* in the Commonwealth of Puerto Rico's Court of First Instance on June 26, 2025. (Docket No. 1-3). The *Complaint* alleged that the height of the counter at Master Donuts' store (the "donut shop"), as well as its aisle width, waiting area design, and lack of accessible-entrance signage, violate Americans with Disabilities Act ("ADA") Title II, because they allegedly prevent wheelchair users from enjoying safe and equal access. *See* id. On September 4, 2025, Defendant invoked federal subject-matter jurisdiction and removed the case to this Court. (Docket No. 1).

On October 1, 2025, Defendant filed a *Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1).* (Docket No. 9). Therein, Defendant alleged that the lawsuit should be deemed moot on account of prior litigation brought by Plaintiff's attorney and that the attorney has a long track record of filing duplicative ADA lawsuits in order to obtain attorneys' fees. Id. at 19.

In response, on October 22, 2025, Plaintiff filed a voluminous, 117-page *Amended Complaint* composed of several hundred paragraphs and subparagraphs. (Docket No. 17). The *Amended Complaint* expanded the scope of litigation to dozens of newly asserted architectural barriers, including ramp slope measurements, parking lot gradients, restroom maneuvering space,

queue management stanchion placement, counter knee and toe clearance, available clear floor space, among many more. *See, e.g.,* id. at 9-91 (detailing dozens of alleged issues in the design of the donut shop). On November 5, 2025, Defendant filed a *Motion to Strike/Dismiss Amended Complaint.* (Docket No. 21). On November 26, 2025, the Court issued an Opinion and Order finding that Plaintiff's capacious *Amended Complaint* contained dozens of superfluous pages, such as duplicated standing analyses recycling assertions about Plaintiff's desire to return to the shop and eat donuts. (Docket No. 23 at 8). The Court held that the *Amended Complaint* was "so riddled with redundancy, verbosity, and prolixity that it would force the Court to ferret for the relevant facts in a mass of verbiage." Id. The Court struck the *Amended Complaint* and ordered Plaintiff to file a streamlined version. Id. at 8-9.

On November 30, 2025, Plaintiff filed a much more succinct 10-page *Second Amended Complaint.* (Docket No. 24). Therein, Plaintiff narrows his allegations. Id. His grievances center around a handful of asserted architectural barriers at the donut shop: (1) an allegedly noncompliant entrance ramp with an excessive slope; (2) an allegedly noncompliant accessible parking space and access aisle; (3) an allegedly inaccessible counter section with inadequate clear floor space and clearance for knees and toes; and (4) an allegedly inaccessible customer restroom, based on the

placement of a trash receptacle within the required clear floor space alongside the toilet. Id. at 3-9.

On December 17, 2025, Defendant filed the instant *Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction* ("*Motion*"). (Docket No. 26). Master Donuts avers that the *Second Amended Complaint* is moot because the asserted architectural barriers were allegedly remediated years earlier in connection with prior ADA litigation involving the same premises and the same plaintiff's counsel. Id. at 9. Master Donuts says that changes in the years since then, such as those brought on by the COVID-19 pandemic, have served only to make the donut shop more open and accessible. Id. at 26. It claims that Plaintiff's attorney is recycling ADA claims identical to those litigated and settled by him in late 2017 and early 2018. (Docket No. 26 at 2-9); Suarez-Torres v. Masters Donuts, Inc. et al, Civil No. 16-2298-DRD, (Docket Nos. 44, 58, 59, 61). It cites the Honorable Judge Daniel R. Domínguez's declaration in that case that Master Donuts "did not have to make...[ADA-related] repairs for several reasons, to wit: (a) the building structure was built before ADA; (b) the defendant is not the owner of the building, and (c) the owner of the building structure is not a party in the instant case." (Docket No. 26 at 8).

As a result, Master Donuts contends that no live controversy exists for adjudication. Id. It avers that the insertion of a new

plaintiff into the dispute does not negate mootness, as the relevant inquiry is into whether the barriers have been removed and whether there has been any recurrence. Id. at 21. Lastly, Master Donuts requests the Court to declare Plaintiff and his counsel vexatious litigants on account of their immense and duplicative ADA-based litigation history in numerous state and federal courts. Id. at 23-24.

On December 19, 2025, Plaintiff filed his *Opposition*. (Docket No. 29). He argues that a Fed. R. Civ. P. 12(b)(1) dismissal would be premature because the *Motion* relies on material from an allegedly unrelated prior case; because the admission of settlement agreements is barred by Fed. R. Evid. 408; on account of the lack of privity between Plaintiff and the plaintiff in the prior litigation; because a live controversy persists due to Plaintiff's personal and recent encounter with architectural barriers at the donut shop; and because Defendant fails to carry the formidable burden of demonstrating voluntary cessation. Id. at 5-18. Plaintiff also suggests that the donut shop may have merely temporarily staged the placement of the furniture in the October 2025 photographs affixed to the *Motion*, and that more durable evidence of routine operations is missing. Id. at 12-13. Lastly, Plaintiff denies that he is vexatious, reasoning that Defendant must offer more than evidence of case counts or settlement prior to merits adjudication. Id. at 18-20.

## II.  APPLICABLE LAW

### A. Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss brought on subject matter jurisdiction and mootness grounds. *See* D.H.L. Assocs., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999); Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).

The First Circuit and the Supreme Court have articulated one definition of mootness as such: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." O'Gorman, 199 F.3d at 54 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). Mootness doctrine "is grounded in the case or controversy requirement and ensures that courts do not render advisory opinions." Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 220 (1st Cir. 2019) (quoting Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16-17 (1st Cir. 2007)) (citation modified). A case can also be deemed moot when "an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." Moore v. Harper, 600 U.S. 1, 14 (2023); *see also* Gulf of Maine Fisherman's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002).

The burden of establishing federal court jurisdiction sits with the plaintiff, but "the burden of establishing mootness rests with the party invoking the doctrine." In re Fin. Oversight & Mgmt.

Bd. for Puerto Rico, 594 F. Supp. 3d 433, 442 (D.P.R. 2019) (quoting Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013)) (citation modified). The burden that the party asserting mootness must carry is "heavy." Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). It must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Mangual, 317 F.3d at 60 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). The First Circuit has likewise described the burden of proving voluntary cessation--which renders a case moot when "the defendant voluntary [sic] ceases the challenged practice"--as "formidable." Conf. of Cath. Bishops, 705 F.3d at 55.

**B. Mootness, merits, and Fed. R. Civ. P. 56**

A party bringing a Fed. R. Civ. P. 12(b)(1) challenge may attempt to "controvert[] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff" and "proffer[] materials of evidentiary quality in support of that position." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

Courts across the country routinely order the conversion of Fed. R. Civ. P. 12(b)(1) motions into Fed. R. Civ. P. 56 summary judgment motions when the resolution of the jurisdictional

challenge is "intertwined" with the merits. *See, e.g.*, Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) *abrogated on other grounds* by Cent. Green Co. v. United States, 531 U.S. 425, 437 (2001) ("a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case"); Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1040 (9th Cir. 2004) (ruling that jurisdictional and merits issues were so intertwined that the district court's resolution amounted to "a grant of summary judgment on the merits"); Torres-Negron v. J & N Recs., LLC, 504 F.3d 151, 162 (1st Cir. 2007); McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 5-6 (D. Mass. 2000) ("if jurisdictional issues cannot be separated from the merits of the case, then consideration of matters outside the pleadings transforms the motion into one for summary judgment") (citing Jones-Booker v. United States, 16 F.Supp.2d 52, 58 n.9 (D. Mass. 1998)).

The First Circuit has recognized that "while such a conversion is required in other Circuits, this Circuit provides more flexibility." Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 134 (D.P.R. 2007) (citation omitted). In cases involving "factual challenges," district courts are empowered with "broad authority to order discovery, consider extrinsic evidence, and

hold evidentiary hearings in order to determine [their] own jurisdiction." <u>Valentin</u>, 254 F.3d at 363.

This Circuit has established a two-part inquiry for "when a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) involves factual questions." <u>Torres-Negron</u>, 504 F.3d at 162. First, the court must discern whether the facts impacting the court's jurisdiction also implicate elements of the plaintiff's cause of action. <u>Id.</u> at 163. If they do, "the district court should employ the standard applicable to a motion for summary judgment." <u>Id.</u> (quoting <u>Autery v. United States</u>, 424 F.3d 944, 956 (9th Cir. 2005)). Second, if the jurisdictional facts are not intertwined with the merits, the court may proceed to weigh the evidence, find the facts, or otherwise "order discovery, consider extrinsic evidence, and hold evidentiary hearings." *See* <u>Valentin</u>, 254 F.3d at 363; <u>Torres-Negron</u>, 504 F.3d at 163.

### III. DISCUSSION

Master Donuts styles its motion as a Fed. R. Civ. P. 12(b)(1) mootness-based attack on the Court's subject matter jurisdiction. In reality, this is not a freestanding jurisdictional dispute. Master Donuts' mootness theory turns on the factual questions at the heart of Plaintiff's ADA claim: Is Plaintiff's counsel regurgitating a resolved lawsuit he brought many years ago? Or had the architectural barriers recurred when Plaintiff stopped by the donut shop in 2025? Have they since been durably remedied?

Hence, the Court concludes that the question of whether it can hear this case is tightly intertwined with its merits. Authority from across the country recommends the consequent application of a Fed. R. Civ. P. 56 summary judgment standard. *See, e.g.*, Holt, 46 F.3d at 1002-03 ("a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case"); Safe Air for Everyone, 373 F.3d at 1040; Torres-Negron, 504 F.3d at 163; McLellan Highway Corp., 95 F. Supp. 2d at 5-6 (citing Jones-Booker, 16 F.Supp.2d at 58 n.9); *see also* Valentin, 254 F.3d at 363. Fed. R. Civ. P. 56 itself permits the Court, "[a]fter giving notice and a reasonable time to respond," to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

Unfortunately, the Court cannot resolve these contentions on the scant paper record before it. Defendant relies in large part on (a) an expert report it submitted in the case of Suarez-Torres v. Masters Donuts, Inc. et al, Civil No. 16-2298-DRD, and (b) a statement under penalty of perjury submitted for the present litigation by its President. (Docket No. 26 at 9-16). While the expert report from the previous case suggests Defendant complied with its ADA obligations back then, and while the contemporary averments about compliance are helpful, these submissions do not

eliminate every genuine dispute in the record. Plaintiff continues to insist that there is a live controversy, that eight-year-old measurements from the expert report are insufficient, that the donut shop changed its layout in the last few years, and that the post-complaint photographs may have been staged. (Docket No. 29 at 10-16). Similarly, while the Court does not disregard the history of the Suarez-Torres case and is not oblivious of Plaintiff's counsel's pattern of litigating very similar allegations against the donut shop, prior remediation is not the same as present compliance.

At this juncture, the Court deems it enough to say that the existing paper record is too sparse to conclude that the donut shop complies with the ADA as a matter of law. As a result, and following the sensible practice of other Districts, the Court will require a joint inspection of the donut shop. *See, e.g.*, Garcia v. Maciel, 2021 WL 4943063, at *1 (N.D. Cal. 2021); Johnson v. Montpelier One LLC, 2020 WL 3504458, at *2 (N.D. Cal. 2020); Myers v. Myers Printing, Inc., 2012 WL 1532431, at *1-2 (M.D. Fla. 2012). As the dispute has narrowed to four discernible categories of barriers in the *Second Amended Complaint*, the joint inspection should focus in particular on: (1) the allegedly noncompliant entrance ramp and its slope; (2) the allegedly noncompliant accessible parking space and access aisle; (3) the allegedly inaccessible counter section, its floor space, and the clearance

for knees and toes; and (4) the allegedly inaccessible customer restroom, in relation to the placement of trash receptacles within the required clear floor space. (Docket No. 24 at 3-9). A targeted inspection of these features of the donut shop is the most effective means of developing a record capable of Fed. R. Civ. P. 56 adjudication.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's *Motion* at Docket No. 26 is **HELD IN ABEYANCE** and, pending further development of the record, will be evaluated under the Fed. R. Civ. P. 56 summary judgment standard. Defendant's request to declare Plaintiff and his counsel vexatious litigants is **DENIED WITHOUT PREJUDICE.**

The parties shall comply with the following joint inspection and supplemental briefing schedule. By **May 26, 2026,** counsel for both parties shall meet at the donut shop to conduct a joint inspection considering the barriers outlined above. The parties may confer and agree upon an expert to conduct the inspection, or each bring an expert of their own. Defendant shall be permitted to undertake requested corrective action during the inspection if it is readily achievable. Within **twenty-one days** after the inspection, Defendant shall file an informative motion to supplement its *Motion* at Docket No. 26, addressing whether Plaintiff's claims are moot according to the joint inspection. Within **twenty-one days** after Defendant's informative motion,

Civil No. 25-1469 (RAM)                                                      13

Plaintiff may file an opposition and cross-move for summary judgment if warranted. Defendant may file a reply within **seven days** of Plaintiff's opposition. Lastly, Plaintiff may file a surreply within **seven days** of Defendant's reply.

      **IT IS SO ORDERED.**

      In San Juan, Puerto Rico, this 24th day of April 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
